**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION,<br><br>                   Plaintiff,<br><br>                   v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>                   Defendant. | Civil Action No. 12-1477 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

This case arises out of a dispute between two labor unions: the International Brotherhood of Electrical Workers, Local 48, AFL-CIO ("the IBEW") and the International Longshore and Warehouse Union ("the ILWU"). The plaintiff, Pacific Maritime Association ("PMA"), is a "multi-employer collective bargaining agent" for "stevedore companies, marine terminal operators and maintenance contractors who employ longshoremen and other categories of dockworkers." Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 5, ECF No. 1. One of PMA's members is ICTSI Oregon, Inc. ("ICTSI"), which is the operator of Terminal 6 at the Port of Portland ("the Port"). Statement of P. & A. in Supp. Def.'s Mot. Transfer Venue ("Def.'s Mem.") at 2, ECF No. 12-1. The PMA and the ILWU asserted in early 2012 that their collective bargaining agreement requires ICTSI to assign certain disputed "reefer work" to ILWU-represented employees.[1] *Id.* At the same time, the Port and the IBEW have claimed that the Terminal 6 lease agreement between IBEW and the Port requires the same work to be assigned to IBEW-represented employees. *Id.*

---

[1] Reefer work involves "plugging in, unplugging, and monitoring refrigerated shipping containers." Def.'s Mem. at 1.

1

In May 2012, this dispute culminated with the ILWU filing unfair labor practice charges with the defendant National Labor Relations Board (the "Board") against the IBEW.  *See* Compl. ¶ 14.  Following an administrative investigation, four days of hearings before a Board hearing officer in Portland, and the submission of the hearing officer's report on the hearings, the Board issued a decision on August 13, 2012, pursuant to 29 U.S.C. § 160(k), which granted the disputed work to the IBEW-represented employees.  *Id.* ¶ 27; *see* Def.'s Mem. at 5.  In June 2012, while the Board's decision was still pending, the PMA and the ILWU filed a civil action in the District of Oregon against ICTSI, seeking to enforce certain arbitration awards that had determined that the disputed reefer work should be performed by ILWU employees.  *See* Def.'s Mem. at 2–3.  That action and at least two other related actions are currently pending before the same judge in the District of Oregon.  Def.'s Mem. at 6–7.

In the instant action, the plaintiff challenges the validity of the Board's August 13, 2012 decision on the grounds that "the Board acted in excess of its delegated powers and contrary to specific statutory language."  Compl. ¶ 43.  The defendant has moved to dismiss the plaintiff's complaint for lack of subject-matter jurisdiction, though that motion is not yet ripe for decision. *See* ECF No. 20.  Presently pending before the Court is the defendant's Motion to Transfer Venue, ECF No. 12, and for the reasons discussed below, the Court grants that motion.[2]

## I.   VENUE MAY BE ADDRESSED BEFORE SUBJECT-MATTER JURISDICTION IS DETERMINED

First, the Court will discuss whether it is appropriate to address the question of venue before deciding the defendant's challenge to the Court's subject-matter jurisdiction.

---

[2] The plaintiff has requested an oral hearing on the defendant's motion to transfer.  *See* Pl.'s Opp'n to Def.'s Mot. to Transfer Venue ("Pl.'s Opp'n") at 1 n.1, ECF No. 15.  The Court denies this request since the memoranda filed in connection with this motion, and the record herein, provide an ample basis for the Court's resolution of this motion. *See* LCvR 7(f).

The Supreme Court has firmly established that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).  In *Sinochem*, the Court held that "a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection," including "whether it has authority to adjudicate the cause." *Id.* at 425.  The unanimous Court reasoned that "[d]ismissal short of reaching the merits means that the court will not 'proceed at all' to an adjudication of the cause," and therefore "[r]esolving a *forum non conveniens* motion does not entail any assumption by the court of substantive 'law-declaring power.'" *Id.* at 431, 433.

Thus, the D.C. Circuit has acknowledged that *Sinochem* "firmly establishes that certain non-merits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (alteration in original) (internal quotation marks omitted) (quoting *Sinochem*, 549 U.S. at 431).  Also, since *Sinochem* was decided, its reasoning has been extended in this Circuit to motions for venue transfer under 28 U.S.C. § 1404.[3]  *See Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 52–53 (D.D.C. 2012) (deciding to address severance and transfer prior to subject-matter jurisdiction); *Shay v. Sight & Sound Sys., Inc.*, 668 F. Supp. 2d 80, 82 (D.D.C. 2009) (addressing motion to transfer venue under § 1404(a) before addressing challenge to subject-matter jurisdiction); *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Although the defendants have moved to dismiss for lack

---

[3] The Supreme Court stated in *Sinochem* that "Congress has codified the [common-law] doctrine [of *forum non conveniens*] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem*, 549 U.S. at 430.  Due to this overlap between the doctrine of *forum non conveniens* and transfer under 28 U.S.C. § 1404, one could justifiably read *Sinochem* itself to apply to motions to transfer venue.

of subject-matter jurisdiction, the motion to transfer venue under § 1404 may be addressed first."); *see also Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 117 (D.D.C. 2008) ("Courts have discretion to resolve issues such as venue that do not affect the merits of the case, without deciding the matter of personal jurisdiction.").

The Court in *Sinochem* observed that the difficulty and complexity of the issues pertaining to jurisdiction will often dictate whether those jurisdictional questions or other, threshold, non-merits issues may be decided first instead. The Court stated that if "a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground." *Sinochem*, 549 U.S. at 436. "But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Id.* The lesson from *Sinochem* is thus a practical one: as long as a court's disposition of an action is based on a threshold, non-merits issue—thereby eschewing any "assumption by the court of substantive 'law-declaring power,'" *id.* at 433—the court may (and should) consider which course would best serve the interests of judicial efficiency. *See also Aftab*, 597 F. Supp. 2d at 79 ("Adjudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists."). In the instant action, as the discussion below makes clear, judicial efficiency strongly favors deciding the defendant's Motion to Transfer Venue prior to addressing the defendant's challenge to the Court's subject-matter jurisdiction.

## II.    APPLICATION OF LEGAL STANDARD FOR VENUE

Having determined that it is appropriate to assess venue before subject-matter jurisdiction, the Court will now discuss whether a venue transfer is warranted.

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The decision whether or not to

transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is discretionary." *In re DRC, Inc.*, 358 F. App'x 193, 194 (D.C. Cir. 2009). "A transfer in derogation of proper venue in the District of Columbia must be justified by particular circumstances that render the forum inappropriate by reference to considerations specified in the statute." *Id.* In deciding a motion to transfer venue under § 1404(a), a court must first determine whether the transferee district is one where the action "might have been brought," 28 U.S.C. § 1404(a), and then must balance the private and public interests involved in the proposed transfer to determine "whether the defendant has demonstrated that considerations of convenience and the interest of justice support a transfer," *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 178 (D.D.C. 2007).

### A.     This Action "Might Have Been Brought" in Oregon

For venue purposes, a civil action may be brought, *inter alia*, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). With reference to that provision, the plaintiff contends that this action is severely limited in geographic scope because it is a narrow challenge to the Board's August 13, 2012 decision, which was issued in Washington, D.C. Therefore, the plaintiff's position is that its "complaint does not challenge or debate any event that occurred outside of the District of Columbia." Pl.'s Opp'n at 9.

Such a blinkered perspective, however, does not acknowledge the broader context of this dispute. Although the final act transpired in the defendant's Washington, D.C. headquarters, the rest of the play was set elsewhere. In particular, this case ultimately centers on a labor dispute in Portland, Oregon, the location where the Board held extensive hearings to inform its decision and where the hearing officer prepared her report. Moreover, Portland is precisely where the immediate effects of the Board's decision were felt and where issues related to the Board's

decision continue to be litigated.  *See, e.g.*, *FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 11 (D.D.C. 2006) ("In determining 'whether the events or omissions are sufficiently substantial to support venue under [28 U.S.C. § 1391], a court should not focus only on those matters that are in dispute or that directly led to the filing of the action.  Rather, it should review the entire sequence of events underlying the claim.'" (internal quotation marks omitted) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004))).  In this case, these events include:  "[t]he disputed work . . . the administrative investigation of unfair labor practice charges, the alleged unlawful conduct, the pending 10(l) court injunctive proceedings, and the Section 10(k) hearing."  Def.'s Mem. at 15.  Since the sequence of events underlying the plaintiff's claim took place almost exclusively in Oregon, this action "might have been brought" there.

### B. Private-Interest Factors Weigh in Favor of Transfer

Next, the Court must assess the balance of the private-interest factors implicated by the proposed transfer of this action.  Those factors traditionally include:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent they may actually be unavailable for trial in one forum; and (6) the ease of access to sources of proof.

*Foote v. Chu*, 858 F. Supp. 2d 116, 121 (D.D.C. 2012).  At the outset, the Court agrees with the parties that neither the fifth nor the sixth factors meaningfully apply to this action because this case will almost certainly be resolved as a matter of law—there will be no need for witnesses or access to "sources of proof" beyond electronically filed documents.  Additionally, neither party disputes that the fourth factor (convenience of the parties) is essentially neutral in this case; if

anything, this factor would militate toward transfer because the plaintiff is located in California, and it does business primarily in California, Oregon, and Washington. *See* Compl. ¶¶ 5–6.[4]

Next, although "[t]he plaintiff's choice of forum is afforded great deference, . . . . that choice is conferred less deference by the court when a plaintiff's choice of forum is not the plaintiff's home forum." *Stockbridge-Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 47 (D.D.C. 2009) (internal quotation marks omitted); *see also United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 79–80 (D.D.C. 2011) (giving deference to plaintiff's choice of forum when (1) the plaintiff was the federal government and had substantial ties to the District of Columbia; and (2) the action involved a challenge to a merger of two national corporations, operating in a national marketplace that would have nationwide antitrust implications). As discussed, the plaintiff's home forum would be the Northern District of California. *See* Compl. ¶ 6; Pl.'s Opp'n at 11 n.7 ("PMA's 'home forum' is San Francisco, California, where the association is headquartered.").

Moreover, although the decision at issue in this action was made in Washington, D.C., "any role played by officials in the District of Columbia is overshadowed by the fact that their decisions were based on work done by government employees" in Oregon—most notably the four days of hearings held by the Board's Portland office that were the basis for the Board's August 13, 2012 decision. *Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002); *see also Stockbridge-Munsee*, 593 F. Supp. 2d at 47 ("Though the administrative action at issue in this case arose in Washington, 'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged with generally regulating and overseeing the [administrative] process.'" (alterations in original) (quoting *DeLoach v. Philip Morris Co.*, 132 F. Supp. 2d 22, 25 (D.D.C.

---

[4] The plaintiff made clear that it "agrees with the Defendant that only private interest factors (1), (2), and (3) are relevant to its motion." Pl.'s Opp'n at 10 n.6.

2000))). The plaintiff relies heavily upon *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001) for its insistence that venue is proper in this District. *See* Pl.'s Opp'n at 11–12. Unlike the plaintiffs in *Greater Yellowstone*, however, the plaintiff in the instant action has no offices or other ties to the District of Columbia. *See Greater Yellowstone*, 180 F. Supp. 2d at 129 (noting that "two of the five plaintiffs . . . have offices in the District of Columbia," and distinguishing contrary cases on that basis).[5] This is a case where "the local population [of Oregon] face[s] specific injury of a particularly local nature either as a result of, or upon enjoinment of, [the defendant's] challenged action," *Otay Mesa*, 584 F. Supp. 2d at 127, and therefore this case's connection to the District of Columbia is attenuated.[6] Hence, because the District of Columbia is not the plaintiff's home forum, and because the District of Columbia has only an attenuated connection to this controversy, the plaintiff's choice of forum is not entitled to deference, and that factor weighs in favor of transfer.

---

[5] Additionally, all of the other cases relied upon by the plaintiff for its argument that its choice of forum in the District of Columbia is entitled to deference were challenges to the rulemaking of a federal agency. *See Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173 (D.D.C. 2009); *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122 (D.D.C. 2008); *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64 (D.D.C. 2007); *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000). These cases noted that a federal rulemaking, even when focused upon a narrow geographic area, has "a national dimension" because the notice-and-comment process is nationwide, and the forward-looking rule that results from the process can potentially apply directly to all areas of the country. *Compare Akiachak*, 502 F. Supp. 2d at 67–68 (noting "the national rule-making process DOI engaged in when formulating the regulation"); *Wilderness Society*, 104 F. Supp. 2d at 15 ("[T]he entire rulemaking process had a national dimension as comments were received from all 50 states and public meetings were held both inside and outside Alaska."), *with Abusadeh v. Chertoff*, No. 06-2014, 2007 WL 2111036, at *6 (D.D.C. July 23, 2007) (granting motion to transfer because "Plaintiff's complaint does not assert a general, broad-based challenge to immigration policies or regulations" but rather "focuses solely on Plaintiff's application for naturalization and asks simply that this Court require Defendants to immediately finish adjudicating *his* application"). Venue in this District is more appropriate when the action challenged is an agency rulemaking with national implications, rather than an agency adjudication of a dispute between two localized parties. *Cf. Save Our Cumberland Mountains, Inc. v. Lujan*, 963 F.2d 1541, 1551 (D.C. Cir. 1992) (acknowledging the distinction between "the national rulemaking context" and "situation-specific litigation").

[6] When a case involves a challenge to federal agency action, the extent to which a court confers deference upon a plaintiff's choice of forum depends upon the litigation's connection to the transferee venue. This latter question, in turn, depends upon whether the federal agency action in question should be characterized as local or national in nature. In this way, the private-interest factor of the plaintiff's choice of forum can, in the context of a challenge to federal agency action, overlap heavily with the public-interest factor of the local interest in having localized controversies decided at home.

The defendant's choice of forum (Oregon), on the other hand, is the true locus of this dispute. As the defendant points out, that is where the two unions and the disputed work are located, and it is also where the alleged unlawful conduct and the entire fact-finding and administrative process underlying the Board's decision took place. *See* Def.'s Mem. at 12, 15. Furthermore, the defendant's preference to litigate this action in Oregon "is certainly . . . more logical . . . in light of the ongoing [related litigation] in that district." *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 14 (D.D.C. 2007). Thus, the second factor, as well as the third factor—whether the claim arose elsewhere—both weigh in favor of transfer. For these reasons, on balance, the private-interest factors generally weigh in favor of transfer.

### C.     Public-Interest Factors Weigh in Favor of Transfer

Finally, the Court must assess the public-interest factors that are implicated by the defendant's request to transfer this action. Those factors have been described traditionally as "(1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Foote*, 858 F. Supp. 2d at 123.

The first of these factors, and particularly the aspect of that factor related to "the pendency of related actions in [the transferee] forum," is of paramount and overriding concern in the context of this case. As discussed above, the plaintiff in the instant action challenges the validity of the Board's August 13, 2012, decision, but the validity of that decision is critical to litigation currently ongoing in the District of Oregon. One of the cases currently pending in Oregon, *International Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, No. 3:12-cv-1058, is an effort by the ILWU and the PMA to enforce arbitration awards against the Port and ICTSI, which conflict with the Board's August 13, 2012, decision. As the defendant in the instant

9

action points out, in its most recent responsive pleading, "ICTSI relies upon the Board's Section 10(k) decision, arguing to the District Court that the Court may not confirm the area arbitration rulings as a matter of law because the Board's contrary Section 10(k) decision trumps those rulings." Def.'s Mem. at 7. Hence, the validity (and consequent preemptive effect) of the Board's decision is of the utmost importance to at least one, if not more, of the pending Oregon actions.

The most pressing practical concern is that transferring this action to the stewardship of the District of Oregon will prevent inconsistent judgments. An inconsistent judgment would potentially impose chaotic effects on the interrelated web of disputes amongst PMA, the labor unions, the Port, and the Board—almost all of which are pending in the District of Oregon, and many of which depend, in one way or another, upon the Board's August 13, 2012 decision. "[G]iven the risk of inconsistent judgments attendant with retaining this case, the Court adheres to the principle that '[t]he interests of justice are better served when a case is transferred to the district where related actions are pending.'" *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 195 (D.D.C. 2012) (quoting *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000)).

### III. CONCLUSION

For the reasons discussed above, the District of Oregon would be a more appropriate venue in which to litigate this action. Thus, the defendant's motion to transfer will be granted. An appropriate Order accompanies this Memorandum Opinion.

Date: November 20, 2012

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge